## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| CESAR CORONA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:23-cv-00140 |
| | § | |
| ALLY FINANCIAL, INC., | § | Jury Demand Endorsed |
| | § | |
| Defendant. | § | |

## <u>COMPLAINT</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Cesar Corona ("Plaintiff"), by and through counsel, for his Complaint against Defendant Ally Financial, Inc. ("Defendant" or "Ally"), states as follows:

### I. INTRODUCTION

1.      Defendant engaged in willful, intentional, reckless, malicious, coercive, deceptive and harassing actions against Plaintiff to further Defendant's efforts to illegally collect from Plaintiff, *in personam*, a debt included and later discharged in his bankruptcy while Plaintiff was protected by either the automatic stay or the discharge injunction.  During the bankruptcy and after the discharge date, Defendant was legally forbidden from making any contact with Plaintiff or taking any actions against him personally to collect the included or discharged debt.  At all relevant times, Defendant knew that it had no reason to be contacting Plaintiff; however Defendant continued to send numerous and repetitive statements and correspondences to Plaintiff demanding payment in a specified dollar amount due by a certain date, offering options to repay or modify the loan, and threatening foreclosure on a property that was previously surrendered and the debt subsequently discharged in a bankruptcy filed by Plaintiff in 2007.

2.      Specifically, Plaintiff claims Defendant violated: 1) Tex. Fin. Code § 392.001 *et seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting invasion of privacy - intrusion on seclusion; and 3) the automatic stay and discharge injunction of the United States Bankruptcy Court for the Eastern District of Texas, Beaumont Division.  Plaintiff seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3.      Plaintiff is a natural person residing in Jefferson County, Texas and is a "consumer," as defined by the TDCA, Tex. Fin. Code § 392.001(1).

4.      Defendant Ally is a foreign corporation that may be served by delivering citation to its registered agent, CT Corporation Systems, 1999 Bryan Street, Ste. 900, Dallas, TX 75201.

5.      Defendant is a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6), and (7).

6.      The debt Defendant was attempting to collect from Plaintiff was a "consumer debt," as defined by the TDCA, Tex. Fin. Code § 392.001(2).

## III. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367.

8.      Venue is proper this district because Defendant transacts business in this district, Plaintiff filed his bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

**A.    The Subject Debt was Included in Plaintiff's Bankruptcy Case and Discharged as to His Personal Liability.**

9.    In August of 2007, Plaintiff, a construction worker, owned a home at 157 Yorkshire Way, in Yuba City, California (the "Property"), where he lived with his family.  When he bought the house, it was valued at $350,000, but when the 2008 economic crisis hit, he not only lost his job, but the value of his property sunk to $250,000.  When he could not make the house payments to Homecomings Financial, LLC (the first lienholder) ("Homecomings") and National City Mortgage Company (the second lienholder) ("National"), he consulted an attorney who told him to stop making payments and file bankruptcy.

10.    On August 30, 2007, Plaintiff filed for Chapter 7 relief in Case 07-26966, in the United States Bankruptcy Court, Eastern District of California (the "California Bankruptcy Case"), listing both the Homecomings and National mortgage loans for the Property on his Schedule D, Creditors Holding Secured Claims, and officially surrendered the Property by way of a properly filed Statement of Intention.  On December 18, 2007, the debt as to Plaintiff's liability for the Property was discharged.

11.    True and correct redacted copies of relevant portions of Plaintiff's Schedule D, Statement of Intention, and Discharge Order in the California Bankruptcy Case are attached hereto as Exhibits "A," "B" and "C," respectively.

12.    After the debt was discharged in California, Plaintiff moved to Texas.  He has no knowledge as to what happened to the Property after he left and he did not hear from Homecomings or National again.  Sometime after the surrender of the Property and discharge, Ally acquired the Homecomings loan and began sending Plaintiff monthly statements.

13.     On July 21, 2022, Plaintiff filed Chapter 7 bankruptcy in case number 22-10256 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Texas, Beaumont Division (the "Bankruptcy Court").

14.     On August 17, 2022, Plaintiff filed a Notice of Change in Creditor Matrix, Notice of Change in Schedule of Creditors, and Amended Schedule E/F: Creditors Who Have Unsecured Claims.  The Notice of Change in Creditor Matrix add Ally as a creditor and included Ally's proper mailing address.  On his amended Schedule E/F, Plaintiff listed an unsecured debt to Ally in the amount of $77,094, with an account number ending in 6211 (the "Account").  The debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.

15.     A true and correct redacted copy of relevant portions of the August 17, 2022 Notices and Amended Schedule E/F are attached hereto as Exhibit "D."

16.     Plaintiff's Notice of Change in Creditor Matrix certified that Plaintiff's bankruptcy counsel served Ally with notice of Plaintiff's Bankruptcy Case, by sending Ally a copy of the "Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline" (known as a "341 Notice").  The 341 Notice informed all creditors about Plaintiff's Bankruptcy Case and the automatic stay imposed by 11 U.S.C. § 362, noting that "[t]he filing of the case imposed an automatic stay against most collection activities."  Also, the 341 Notice stated, in part, "Creditors cannot demand repayment from debtors by mail, phone, or otherwise."  Further, it informed all creditors that they cannot try to collect from the debtors by taking any collection actions against him or his property, noting that "Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees."  The United States Postal Service did not return the 341 Notice sent to Ally, creating a presumption it was received.

17.    A true and correct redacted copy of the 341 Notice is attached hereto as Exhibit "E."

18.    On October 19, 2022, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order").  The Discharge Order followed Official Form 318, including the explanatory language contained therein about the effect of the discharge.  The Discharge Order discharged Plaintiff from any liability for the debt created by the Account.  Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally.  Creditors who violate this order can be required to pay debtors damages and attorney's fees."

19.    On or about October 21, 2022, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Defendant by first class mail.  This transmission, which was not returned, constituted notice to Defendant of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

20.    A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "F."

21.    At no time during the pendency of Plaintiff's Bankruptcy Case did Defendant or any other person or entity object to or dispute the details or completeness of the claim regarding the Account listed on Amended Schedule E/F.

22.    At no time did Plaintiff reaffirm the debt on the Account with any person or entity.

23.    At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

24.     At no time after Plaintiff filed his California Bankruptcy Case did he inform Homecomings, National or Defendant that he had an interest in retaining the surrendered Property.

25.     Additionally, as Plaintiff had vacated the Property and it was no longer his primary residence, he did not qualify for or request any loss mitigation.

**B.     During the Bankruptcy and Post-Discharge, Defendant Made Harassing and Coercive Contacts with Plaintiff in Its Illegal Attempts to Collect the Debt from Him Personally.**

26.     After Plaintiff had permanently vacated the Property during the California Bankruptcy, during his Texas bankruptcy, and after the discharge of the debt, Defendant engaged in prohibited debt collection activity against Plaintiff in an attempt to coerce or deceive him into making payments on the Account, in whole or in part, or to take actions to financially benefit Defendant to his detriment.  Despite the debt being included in his bankruptcy and later discharged, Ally continued sending Plaintiff billing statements and correspondence on the Account.

27.     Defendant has, since the filing of Plaintiff's Bankruptcy Case, sent Plaintiff regular correspondence and monthly billing statements with detachable payment coupons and return envelopes on the Account, demanding an "Payment Amount," stated in a specified dollar amount, by a specific "Payment Date," and which charged or threatened to charge Plaintiff various fees. The statements also included instructions on how to make payments.

28.     For instance, on or about September 1, 2022, during Plaintiff's bankruptcy and before the automatic stay was lifted, Ally sent Plaintiff a regular monthly Loan Statement with a detachable payment coupon and return envelope, instructing Plaintiff to "Please return this portion with your payment" and "Make Checks Payable To: ally," representing to him that there was a delinquent balance due and payable on the Account of $77,109.38, including a $15 property inspection fee that had been charged to the Account, and demanding payment by October 1, 2022. The statement included an "IMPORTANT MESSAGE: Your loan has matured," as well as an

"Account History" section, misrepresenting that Plaintiff missed multiple payments due in 2016 and 2017, and that the total payment of $77,109.38, "if paid, would bring your loan current."

29.    A true and correct redacted copy of the September 1, 2022 statement is attached hereto as Exhibit "G."

30.    On or about October 3, 2022, during Plaintiff's bankruptcy and before the automatic stay was lifted, Ally sent Plaintiff a regular monthly Loan Statement with a detachable payment coupon and return envelope, instructing Plaintiff to "Please return this portion with your payment" and "Make Checks Payable To: Ally Bank," representing to him that there was a delinquent balance due and payable on the Account of $77,124.38, including another $15 property inspection fee that had been charged to the Account, and demanding payment by November 1, 2022.  The statement included an "Account History" section, misrepresenting that Plaintiff missed multiple payments due in 2016 and 2017, and that the total payment of $77,124.38, "if paid, would bring your loan current."

31.    A true and correct redacted copy of the October 1, 2022 statement is attached hereto as Exhibit "H."

32.    On or about October 27, 2022, after Plaintiff received a discharge on the Account, Ally sent Plaintiff a letter advising that he was "entitled to counseling through an approved HUD Agency . . . to provide you with the information and assistance you need to avoid foreclosure." The letter urged Plaintiff "to take advantage of this service by seeking an appointment with a HUD-approved housing counseling agency, " advised that he could "also seek foreclosure assistance at no charge by calling the HOPE Hotline . . .," and provided multiple toll free numbers to seek assistance.

33.    A true and correct redacted copy of the October 27, 2022 letter is attached hereto as Exhibit "I."

34.    On or about October 28, 2022, after Plaintiff received a discharge on the Account, Ally sent Plaintiff a letter advising that he was "behind on your mortgage payment," that Ally wants "to notify you of possible ways to avoid losing your home" and that they "have a right to invoke foreclosure based on the terms of your mortgage contract," despite the fact that Plaintiff had long ago surrendered the Property and received discharge of the debt related to the Property and the Account.  The letter advised that Ally had "attempted to speak with you regarding your account," and requested Plaintiff contact Ally by phone, email or regular mail because Ally "would like the opportunity to work with you on establishing a workout solution on your account."  The letter offered several options to bring Plaintiff's Account current, including a repayment plan, forbearance plan, loan modification, pre-foreclosure short sale, or a deed-in-lieu.  The letter went on demanding Plaintiff to "Please act quickly.  We are ready to assist you.  You will soon be sent a notification requesting personal information needed to review your loan and situation for the options listed above."  The letter warned that Ally "may report information about your account to credit bureaus," that "[l]ate payments, or other defaults on your account may be reflected in your credit report," and that "[t]his communication is from a debt collector.  Any information obtained can be used for the purpose of collecting a debt."

35.    A true and correct redacted copy of the October 28, 2022 letter is attached hereto as Exhibit "J."

36.    On or about November 1, 2022, after Plaintiff received a discharge on the Account, Ally sent Plaintiff a letter advising that the "loan has matured in accordance with the terms of the note and is WHOLLY DUE AND PAYABLE IN FULL," and that "[w]ithin 60 days of the date of this notice, we will no longer accept monthly payments."  The letter misrepresented that "you recently made partial payment(s) following the maturity date of your loan" and that "the remaining unpaid balance is immediately due in its entirety."  The letter requested Plaintiff contact Ally

multiple times if Plaintiff anticipates problems making his payments, and offered multiple options if he sought alternatives to the upcoming payment, including refinancing, selling his home to pay off the Account, modify the loan, and a payment forbearance, although Plaintiff had long ago vacated the home and received a discharge of the debt related to the Property and the Account. The letter went on to warn Plaintiff that "[t]his communication is from a debt collector. Any information obtained can be used for the purpose of collecting a debt."

37.     A true and correct redacted copy of the November 1, 2022 letter is attached hereto as Exhibit "K."

38.     On or about November 1, 2022, after Plaintiff received a discharge on the Account, Ally sent Plaintiff a regular monthly Loan Statement with a detachable payment coupon and return envelope, instructing Plaintiff to "Please return this portion with your payment" and "Make Checks Payable To: Ally Bank," representing to him that there was a delinquent balance due and payable on the Account of $77,144.38, including another $20 property inspection fee that had been charged to the Account, and demanding payment by December 1, 2022. The statement included an "Account History" section, misrepresenting that Plaintiff missed multiple payments due in 2016 and 2017, and that the total payment of $77,144.38, "if paid, would bring your loan current."

39.     A true and correct redacted copy of the November 1, 2022 statement is attached hereto as Exhibit "L."

40.     On or about December 1, 2022, after Plaintiff received a discharge on the Account, Ally sent Plaintiff a regular monthly Loan Statement with a detachable payment coupon and return envelope, instructing Plaintiff to "Please return this portion with your payment" and "Make Checks Payable To: Ally Bank," representing to him that there was a delinquent balance due and payable on the Account of $77,164.38, including another $20 property inspection fee that had been charged to the Account, and demanding payment by January 1, 2023. The statement included an "Account

History" section, misrepresenting that Plaintiff missed multiple payments due in 2016 and 2017, and that the total payment of $77,164.38, "if paid, would bring your loan current."

41.    A true and correct redacted copy of the December 1, 2022 statement is attached hereto as Exhibit "M."

42.    On or about January 3, 2023, after Plaintiff received a discharge on the Account, Ally sent Plaintiff a regular monthly Loan Statement with a detachable payment coupon and return envelope, instructing Plaintiff to "Please return this portion with your payment" and "Make Checks Payable To: Ally Bank," representing to him that there was a delinquent balance due and payable on the Account of $77,184.38, including another $20 property inspection fee that had been charged to the Account, and demanding payment by February 1, 2023.  The statement included an "Account History" section, misrepresenting that Plaintiff missed multiple payments due in 2016 and 2017, and that the total payment of $77,184.38, "if paid, would bring your loan current."   On the transaction history located on the last page of the statement, there was an accounting of multiple fees and expenses that had incurred on the Account since August 2022.

43.    A true and correct redacted copy of the January 3, 2023 statement is attached hereto as Exhibit "N."

44.    On or about February 1, 2023, after Plaintiff received a discharge on the Account, Ally sent Plaintiff a regular monthly Loan Statement with a detachable payment coupon and return envelope, instructing Plaintiff to "Please return this portion with your payment" and "Make Checks Payable To: Ally Bank," representing to him that there was a delinquent balance due and payable on the Account of $77,204.38, including another $20 property inspection fee that had been charged to the Account, and demanding payment by February 1, 2023.  The statement included an "Account History" section, misrepresenting that Plaintiff missed multiple payments due in 2016 and 2017, and that the total payment of $77,204.38, "if paid, would bring your loan current."

45.     A true and correct redacted copy of the February 1, 2023 statement is attached hereto as Exhibit "O."

46.     Ally took its *in personam* collection actions against Plaintiff even after: 1) it knew or should have known the debt was discharged in Plaintiff's California Bankruptcy Case, 2) it knew the debt was included and later discharged in Plaintiff's Texas Bankruptcy Case, and 3) it knew or should have known that Plaintiff had not expressed any interest in retaining the Property by his Statement of Intention to surrender the Property filed in his California Bankruptcy Case.

47.     To the extent any of the statements or letters at issue contained a message that they were being sent for informational purposes, the overwhelming format, presentation and print font size or characteristics, and other representations in the letters or statements and detachable payment coupons, make it evident that the statements and letters were sent for collection purposes and to seek payment, either specifically, deceptively or coercively.  For example, the Loan Statements expressly seek from Plaintiff a "Payment Amount," stated in a specified dollar amount, by a specific "Payment Date," and show that other fees and charges have been or may be assessed to the Account if the demanded payment was not received.  Also, the statements include detailed payment instructions.

48.     The purpose of Plaintiff filing bankruptcy was to get relief from the stress and anxiety caused by the dire financial straits in which he found himself.  Because Defendant did not respect the automatic stay and discharge injunction, as well other state and federal laws as more particularly set forth herein, Plaintiff has understandably and plausibly suffered, and will continue to suffer, severe and extreme emotional distress causing him to experience physical symptoms of anxiety, worry, fear, insomnia, fatigue, and distraction, which increased, and will continue to increase, with each contact from Defendant as more particularly set forth in the following sections, including section V – Damages.

## V. DAMAGES

49.     Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

50.     In addition to any damages previously stated hereinabove, the conduct of Defendant has proximately caused Plaintiff past and future monetary loss, in part, arising from costs of driving to and from his bankruptcy lawyer's office to bring him copies of documents and correspondence sent by Defendant, actions he had to take investigating his claims at bar and expenses related thereto and in bringing this lawsuit.  Defendant's actions also caused and will cause Plaintiff past and future mental distress and emotional anguish, which caused Plaintiff fear, worry, anxiety and other discernable injuries to Plaintiff's emotional state, producing symptoms of stress, and insomnia, and headaches related to Defendant's conduct, and other damages, evidence for all of which will be presented to the jury.  Moreover, dealing with the consequences of Defendant's actions has cost Plaintiff time and mental energy, which are precious to him.

51.     Specifically, the actions of Defendant, in particular, the constant sending of statements and correspondence demanding payment or that he take other actions with regard to the Property or the Account, brought back the negative emotions and anguish of having to file and go through bankruptcy and caused Plaintiff new fears, stress and extreme mental anguish.  Feelings of extreme worry, fear and anxiety overtook Plaintiff and increased with each statement and correspondence from Defendant.  Because Defendant's harassment was continuous and it was sending statements and correspondence about the Account that should have stopped when the Bankruptcy Case was filed, Plaintiff was concerned that something had gone wrong with the bankruptcy and was concerned that the debt was somehow not discharged.  He is worried about how this will impact his future credit.

52.    Plaintiff was entitled to a "fresh start" after going through the bankruptcy process and this was frustrated by Defendant's outrageous disregard for federal and state law(s).  Plaintiff was injured each and every time he received a statement or other correspondence, which caused him fear, worry, shock and physical pain.  Defendant's actions also caused and will cause Plaintiff past and future severe mental distress and emotional anguish, which caused Plaintiff fear, worry, anxiety and other discernable injuries to Plaintiff's emotional state, producing symptoms of stress, insomnia, anxiety, and other damages, evidence for all of which will be presented to the jury.

53.    At all relevant times, Defendant knew, and it continues to know, that, pursuant to the automatic stay and discharge order granted by a U.S. Bankruptcy Court, debts included and discharged in bankruptcy are no longer legally collectable, but Defendant made a corporate decision to act knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been included in Plaintiff's bankruptcy and later discharged as a result of Plaintiff's Bankruptcy Case.  Defendant had no right to engage in any of its actions at issue.

54.    Plaintiff believes that, after reasonable discovery in this case, he will be able to show that all actions taken by, or on behalf of, Defendant were done willfully, knowingly, intentionally and/or recklessly, and therefore maliciously, with the desire to harm Plaintiff by inducing him to pay the Account, with the actual knowledge that such actions were in violation of the law.

55.    Plaintiff believes that, after reasonable discovery, he will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, recklessly, and maliciously has refused to correct its policies and comply with applicable laws, of which laws Defendant is well-aware.

-13-

56.    Plaintiff believes that, after reasonable discovery, he will be able to show that Defendant's actions at issue were part of Defendant's illegal design(s), implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in each of debtor's bankruptcy cases.

57.    Plaintiff believes that, after reasonable discovery, he will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, recklessly and maliciously attempting to collect on debts included in an active bankruptcy or discharged in bankruptcy.   Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant.  Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

58.    Due to Defendant's conduct, Plaintiff was forced to hire counsel, and his damages include reasonable attorney's fees incurred in prosecuting his claims.

## VI.  GROUNDS FOR RELIEF – COUNT I

## TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

59.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as well the Section above entitled "Damages," as if fully rewritten here.

60.    Defendant, through all of its *in personam* collection actions at issue, has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a)    Tex. Fin. Code § 392.301(a)(8).  "THREATS OR COERCION.  (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: ... (8) threatening to take an action prohibited by law."

-14-

Because 1) the automatic stay and bankruptcy discharge injunction have force of law and prohibit creditors from attempting to collect debts included or discharged in bankruptcy *in personam*; and 2) the common law protects Plaintiff from intrusions on his solitude, seclusion and private affairs, Defendant's actions at issue of consistently sending statements and correspondence demanding payment on a debt included and later discharged in bankruptcy, and to coerce him to contact Defendant or take other actions to financially benefit Defendant, also violated the TDCA.

> b)    Tex. Fin. Code § 392.303(a)(2).  "UNFAIR OR UNCONSCIONABLE MEANS.  (a) In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices. …  (2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

Inasmuch as Defendant, in its monthly statements, as shown in previous paragraphs, was attempting to collect from Plaintiff fees assessed to the Account, specifically the property inspection fees, Defendant's acts were unfair and unconscionable as defined by this section of the TDCA.

> c)    Tex. Fin. Code § 392.304(a)(3).  "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS.  (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: ... (3) representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer."

Inasmuch as Defendant was soliciting Plaintiff to send Defendant his personal, private and financial information by offering him options to enter a repayment plan, forbearance plan, loan modification, pre-foreclosure short sale, and/or deed-in-lieu long after Plaintiff had surrendered and vacated the Property, Defendant made false

representations and solicitations to Plaintiff to obtain his personal and confidential

information to further Defendant's illegal post-discharge collection efforts on the Account.

d)    Tex. Fin. Code § 392.304(a)(8). "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS. (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: ... (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."

Ally misrepresented to Plaintiff that the Account, which was in bankruptcy or had

been discharged, was past due, owing and collectable from Plaintiff in its statements and

correspondences sent to Plaintiff. These actions by Defendant were misrepresentations of

the character, extent or amount of the subject debt, in violation of the TDCA.

e)    Tex. Fin. Code § 392.304(a)(12). "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS. (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices … (12) which prohibits representing that a consumer debt will be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges."

Since 11 U.S.C. § 362 prohibits Defendant from attempting to collect on the debt

on the Account, Ally's representations to Plaintiff that he was responsible for fees and

charges related to the Account after he filed for bankruptcy violated this section of the

TDCA.

f)    Tex. Fin. Code § 392.304(a)(19). "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS. (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:" … (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

For the reasons stated in the preceding paragraphs (a-e); Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt when Defendant knew the Account was discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff *in personam*.

61.    Regarding Plaintiff's claim against Defendant under Tex. Fin. Code § 392.304(a)(8), all of Defendant's misrepresentations made to Plaintiff about the character, extent or status of the subject debt, were made by design to deceive Plaintiff into believing he was still personally liable for the debt, and did in fact cause Plaintiff to have such belief.  Defendant's misrepresentations made to Plaintiff that he had a delinquent account with Defendant caused and resulted in his thinking differently about the character, extent, amount or status of the subject debt. Defendant's misrepresentations at issue, made him continue to think perhaps his bankruptcy attorney made an error, or there was some issue about which he was unaware, that caused the debt to not be discharged in his Bankruptcy Case and he had to pay it.  Defendant's actions in stalking Plaintiff through repetitive monthly statements and correspondence caused and exacerbated his mental anguish and emotional distress.

62.    Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees.  Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud and/or willful and intentional or reckless misconduct, entitling Plaintiff to punitive damages.

63.    Because of Defendant's conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include his reasonable attorney's fees incurred in prosecuting this claim.

### VII.  GROUNDS FOR RELIEF – COUNT II

### INVASION OF PRIVACY – INTRUSION OF SECLUSION

64.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as well the Section above entitled "Damages," as if fully rewritten here.

65.    Defendant intentionally intruded on Plaintiff's *solitude, seclusion and private affairs* when Defendant, after the debt had been included in his bankruptcy or discharged, sent the subject Loan Statements and other letters or notices on the Account at issue demanding payment and requesting Plaintiff contact Defendant about either the Property or the Account when it knew such contact was prohibited by the automatic stay or the discharge injunction.  Such actions were intrusions on Plaintiff's solitude, seclusion and private affairs and such wrongful acts of Defendant caused injury to Plaintiff.

66.    The intrusions were of a kind that would be highly offensive to a reasonable person because each involved the violation of federal or state law(s) and were designed to injure Plaintiff both physically and financially.  These wrongful acts of Ally caused injury to Plaintiff.

67.    Plaintiff's expectation not to be contacted and harassed by Defendant on the Account was reasonable and lawful.  Plaintiff was no longer in possession of the collateral Property, having surrendered it fifteen (15) years earlier.  Moreover, either the automatic stay or the discharge injunction was in place during all times at issue, which prohibited Defendant from contacting him about the Account or seeking collections from him personally.  Nor did Plaintiff have any other business dealings with Defendant other than the Account.

68.    After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant knew and continues to know that a discharge order means the debt is no longer collectable, but Defendant has made a business decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiff's right to privacy.  After a reasonable

time to conduct discovery, Plaintiff believes he can prove that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts included and discharged in bankruptcy.

69.    Defendant's intentional or reckless acts were invasions of Plaintiff's privacy rights and caused injury to Plaintiff, which resulted in extreme emotional anguish, causing the physical harm of shock, stress, anxiety, insomnia, distraction, and loss of time and inconvenience. Plaintiff's injuries resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

### VIII.  GROUNDS FOR RELIEF- COUNT III

### VIOLATIONS OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION

70.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as well the Section above entitled "Damages," as if fully rewritten here.

71.    At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case and the discharge of the debt on the Account.

72.    The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a debt from Plaintiff that was included and discharged in his bankruptcy, in gross violation of the automatic stay of 11 U.S.C. § 362 and discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

73.    Defendant's actions were willful acts to further its efforts to collect the debt from Plaintiff, in violation of the automatic stay of 11 U.S.C. § 362 and discharge injunction imposed by 11 U.S.C. § 524(a).  Defendant attempted through its statements and other correspondence to coerce and deceive Plaintiff, through fear, intimidation and deception, to pay a debt that was included in his bankruptcy and later discharged.  Defendant's failure to comply with the aforesaid laws, despite being on notice of Plaintiff's Bankruptcy Case and discharge, and the effect of the

discharge as to the subject debt on the Account, illustrates its utter contempt for federal law and the discharge injunction and is a willful violation of the orders and injunctions of the Bankruptcy Court as they concern the Bankruptcy Case filed by Plaintiff.

74.     Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff.  After this *prima facie* showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on his claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

75.     Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived ..."

76.     There are no exceptions under 11 U.S.C. § 362, 11 U.S.C. § 524, or other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the automatic stay or discharge injunction, as stated above.

77.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint,

none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

78.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant.  No defense of failure to mitigate should be allowed.

79.     Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of the automatic stay of 11 U.S.C. § 362, the discharge injunction of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX.  VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

80.     Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

81.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue of Defendant were taken by employees, agents, servants, or representatives of Defendant, within the line and scope of such individuals' (or entities') express or implied authority, through employment,

agency, or representation, which imputes liability on Defendant for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Cesar Corona prays the Court:

A.     Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, intrusion to seclusion, solitude and private affairs, and violations of the automatic stay and discharge injunction;

B.     Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.     Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demand a trial by jury on all issues so triable.

April 7, 2023                              */s/ James J. Manchee*
Date                                       James J. Manchee